UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| RANDY WIECK, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> V. ) <br> ) <br> MATTHEW BEVIN, et al., ) <br> ) <br> Defendants. ) | Civil No. 3:17-cv-1-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on Defendants' Motions to Dismiss. [R. 3; R. 4.] The Eleventh Amendment to the Constitution protects states against suits from individuals and protection of this sovereignty is nearly absolute. Alexander Hamilton, in Federalist 81, explained the doctrine this way:

> It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. This is the general sense and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every state in the Union. Unless, therefore, there is a surrender of this immunity in the plan of the convention, it will remain with the states, and the danger intimated must be merely ideal.

(quoted by *Hans v. Louisiana*, 134 U.S. 1, 12 (1890); *Alden v. Maine*, 527 U.S. 706, 716 (1999).)

Here, the Eleventh Amendment protects the Commonwealth of Kentucky from suit.

Accordingly, Defendants' Motions to Dismiss [R. 3; R 4.] are **GRANTED**.

# I

## A

There are a lot of Plaintiffs in this case. They are all residents of Kentucky. They bring this suit individually and as representatives of a class greater than 146,000 persons who are current and retired teachers in Kentucky public schools. [R. 1-1 at 5.] The Defendants are Governor Matthew Bevin in his official capacity and both the President of the Senate, Robert Stivers, and the Speaker of the House Representatives, now Jeff Hoover, in their official capacities. [R. 1.]

In their complaint, Plaintiffs allege various Constitutional claims against the Defendants related to the failure of the parties to adequately fund the Kentucky Teachers Retirement System "resulting in an unfunded liability in excess of $24.43 billion dollars ending in the fiscal year June 30, 2015, thus creating a decline in KTRS's funded ratio of less than 42% . . . of pension benefits it owes to its members." [R. 1-1 at 8.] The parties do not disagree as to the dire financial nature of KTRS. [R. 3-1 at 2.] Neither does the Court.

As Defendants indicated [*see* R. 3-1 at 2], Plaintiffs make three complaints, though their precise causes of action are difficult to ascertain. For example, in their third complaint, Plaintiffs cite no statute or section of either the Federal or State Constitution, only stating that they are "threatened with irreparable injury to their retirement benefits." [R. 1-1 at 9.] After combing the Complaint, the Court has ascertained alleged violations of the following statutes and sections of the United States and Kentucky Constitutions: violation of KRS 161.420 and 161.714; violation of Article 1, section 10 of the United States Constitution; violation of Section 19 of the Kentucky Constitution; and violation of 14th Amendment rights pursuant to 18 U.S.C § 1983. [*See* R. 1-1.]

On January 3, 2017, this case was removed to this Court. [*See* R. 1.] Defendants filed Motions to Dismiss, which are now ripe for review. [R. 3; R. 4.]

## II

### A

This Court's authority to resolve the matters in this case hinges on the applicability of the Eleventh Amendment, which reads, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In general, states are immune from claims brought against them by private persons in federal court. *See, e.g., Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); U.S. CONST. amend. XI. The Eleventh Amendment protects states against all types of claims, "whether for injunctive, declaratory or monetary relief." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012). States are protected by the Eleventh Amendment even "when only individual state officials are the nominal defendants but the state is the real, substantial party in interest." *Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299, 301 (6th Cir. 1984); *see Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("Individuals sued in their official capacities stand in the shoes of the entity they represent); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

Here, Plaintiffs do not pretend that the individuals named in this lawsuit will personally rectify the shortfalls of KTRS with their personal funds, but instead the relief they seek will "involve substantial expenditures from the public funds of the state." *Edelman v. Jordan*, 415 U.S. 651, 665 (1974). When "the action is in essence one for the recovery of money from the state," the action is actually against the state, not the individuals named. *Id*.

There are three exceptions to Eleventh Amendment immunity. First, Congress may abrogate a state's immunity pursuant to its Fourteenth Amendment powers, *see Alden v. Maine*, 527 U.S. 706, 756 (1999); second, a state may waive its immunity, *see Sossamon v. Texas*, 563 U.S. 277, 284-85 (2011); and third, a state's waiver may be invalidated under the exception found in *Ex Parte Young*, 209 U.S. 123 (1908).

**i**

First, for Congress to abrogate a State's Eleventh Amendment immunity, it must make its "intention unmistakably clear in the language of the statute." *Seminole Tribe*, 517 U.S. at 55. Also, a court must find that "Congress has acted pursuant to a valid exercise of power." *Lawson*, 211 F.3d at, 334 (quoting *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996)).

Congress has not abrogated Kentucky's sovereign immunity anywhere that this Court can find or that either party has pointed out. Therefore, Kentucky's sovereign immunity will not be waived pursuant to Congress's abrogation.

**ii**

Second, a state may waive its own immunity in a number of ways. It may waive immunity expressly, by very clearly articulating its consent to be sued in federal court. See *Sossamon*, 563 U.S. at 284-85. A state may also waive its immunity through its litigation conduct. *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002); *Ernst v. Rising*, 427 F.3d 351, 358 (6th

Cir. 2005). "[A]t least in some cases, a state waives its sovereign immunity by removing to federal court." *Lilly Investments v. City of Rochester*, 674 F. App'x 523, 530 (6th Cir. 2017) (citing *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002)). Courts have looked at the litigation conduct of parties to determine if removing to federal court constitutes a waiver of immunity. A simple "[a]ppearance in court to present certain defenses, such as a statute of limitations argument, is not a defense on the merits indicating waiver of immunity." *Boler v. Earley*, No. 16-1684, 2017 WL 3202778, at *12 (6th Cir. July 28, 2017). In *Nair v. Oakland Cty. Cmty. Mental Health Auth.*, 443 F.3d 469, 476 (6th Cir. 2006), the Sixth Circuit contemplated specifically that a State who removes to federal court, but then immediately makes a motion to dismiss has not waived its sovereign immunity.

Kentucky has not clearly consented to federal court jurisdiction here and in fact has enacted legislation stating that the "members of the General Assembly, organizations within the legislative branch of state government, or officers or employees of the legislative branch shall not be made parties to any action challenging the constitutionality or validity of any statute or regulation." Ky. Rev. Stat. Ann. § 418.075 (West). Though the State removed this action to Federal Court, their litigation conduct does not indicate waiver of their Eleventh Amendment immunity. Both Defendants have only made motions to dismiss and have not made arguments touching on the merits and have therefore not waived their immunity.

### iii

The final exception to Eleventh Amendment sovereign immunity exists pursuant to the doctrine set forth in *Ex parte Young*. Under *Ex parte Young*, individuals who are "officers of the state" who are violating or threatening to violate the Federal Constitution "may be enjoined by a Federal court of equity from such action." 209 U.S. at 155–56, 28 S.Ct. 441. Claims brought

under *Ex Parte Young* cannot provide "retroactive relief," but can only provide prospective relief. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). A "court may enter a prospective suit that costs the state money . . . if the monetary impact is ancillary, i.e., not the primary purpose of the suit." *Boler*, No. 16-1684, 2017 WL 3202778, at *15. To be clear, "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). To make the determination of whether the relief sought is prospective or retroactive, the Court looks at whether "money or the non-monetary injunction is the primary thrust of the suit." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 510 (6th Cir. 2008). It follows that injunctive relief pursuant to the *Young* exception is only available against the state officers and not the state itself. *Lawson*, 211 F.3d at 334.

The distinction between prospective relief and retroactive relief is not as clear as "day and night," so an examination of cases where the *Ex Parte Young* exception was allowed is useful. *Edelman*, 415 U.S. at 667. In *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 475 (6th Cir. 2008), The League alleged that "Ohio's election machinery unconstitutionally denie[d] or burden[ed] Ohioans' right to vote based on where they live in violation of the Equal Protection Clause." The Sixth Circuit found that this prayer for relief, to be able to vote, was appropriately prospective and had only an ancillary effect on the State's treasury. The primary thrust of the suit was the ability to vote without a burden. The ancillary effect to the state budget was the state of Ohio had to make voting not a burden. In *Boler*, No. 16-1684, 2017 WL 3202778, at *15, the Court evaluated various players in the Flint Water Crisis to determine who might be afforded Eleventh Amendment Immunity. There, the Governor was denied immunity under the *Ex Parte Young* exception because the Plaintiffs were requesting "repairs of private

property and establishment of medical monitoring to provide healthcare [and] appointment of a monitor who will assist in the development of remedial plans including, but not limited to: early education, education intervention programs, and criminal and juvenile justice evaluations." *Boler*, No. 16-1684, 2017 WL 3202778, at *15. (internal brackets omitted). Again, the Plaintiffs were not requesting funds from the State treasury, but were requesting other types of prospective relief to alleviate the ongoing harm caused to them by ongoing Constitutional violations. These requests had an effect on the State treasury, but that was not the thrust of the prayer for relief. Finally, in *Milliken v. Bradley*, 433 U.S. 267, 289 (1977), the prospective relief required was for Detroit "to eliminate a de jure segregated school system," certainly costing Michigan money, but desegregating schools was the primary thrust of the suit.

The two Constitutional violations alleged by Plaintiffs are: violation of Article I, Section 10, that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts;" and violation of their 14th Amendment rights pursuant to 18 U.S.C. § 1983. [R. 1 at 7; R. 1 at 9.] Plaintiffs allege they were deprived of their property without the benefit of due process and the named Defendants have violated the Constitution by impairing their obligation to contracts. [*Id*.] Inititally, these complaints seem to fall under the *Ex Parte Young* exception to Eleventh Amendment immunity. However, the relief Plaintiffs seek is monetary and must come directly from the State treasury and is thus forbidden by the Eleventh Amendment. The main thrust of the suit is monetary. In fact, there is no other remedy available to Plaintiffs except for this Court to force the Defendants to withdraw from the Treasury to fully fund KTRS. Plaintiffs request that this Court order Defendants "to cure the financial deficiency of KTRS for the benefit of plaintiffs and all annuitants and place same on an actuarially sound and healthy financial basis." [R. 1-1 at 9.] They state, "Defendants should be directed to perform their constitutional and

statutory duties to adequately fund KTRS to an actuarially and financially sound and healthy status pursuant to the contract the defendants have enacted and made with plaintiffs and said annuitants." [*Id.*] The relief requested by the Plaintiffs is purely monetary; the effect of a judgment from this Court would be solely monetary and would force the Defendants to withdraw from the State treasury to fund KTRS. This Court may not award such relief due to the sovereignty of the Commonwealth of Kentucky granted by the Eleventh Amendment.

The exception found in *Ex Parte Young* does not save Plaintiffs' Constitutional complaints because the relief they request, for KTRS to be made financially sound, is specifically foreclosed in *Ex Parte Young*. Plaintiffs' claims of Constitutional violations, Article 1, Section 10, and the Fourteenth Amendment, are dismissed.

**iv**

Plaintiff's remaining complaints are: violation of Section 19 of the Constitution of Kentucky, "[n]o ex post facto law, nor any law impairing the obligation of contracts, shall be enacted;" KRS 161.420, describing how the Kentucky Teacher Retirement System shall be funded; KRS 161.714, "an inviolable contract of the Commonwealth, and the benefits provided herein shall, except as provided in KRS 6.696, not be subject to reduction or impairment by alteration, amendment, or repeal;" and Count Three (3) of Plaintiff's complaint alleging that they are faced with "irreparable injury to their retirement benefits as a result of the contractual breach by defendants of said inviolable contract made with plaintiffs and said annuitants." [R. 1-1 at 7-9.] Congress has not abrogated Kentucky's sovereign immunity. *See Alden v. Maine*, 527 U.S. 706, 756 (1999). Kentucky has not waived their sovereign immunity. *See Sossamon v. Texas*, 563 U.S. 277, 284-85 (2011). And no Constitutional violation is named in these remaining

claims. *See Ex Parte Young*, 209 U.S. 123 (1908). Because these claims do not fall under any of the exceptions to Eleventh Amendment immunity, they are dismissed.

### III

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint which fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Commonwealth of Kentucky is protected by sovereign immunity, which is absolute except in rare circumstances. U.S. CONST. amend. XI. Plaintiffs' claims do not fall into any of the exceptions to sovereign immunity and their claims are dismissed.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby ordered:

1. The Defendants' **Motions to Dismiss [R. 3; R. 4]** are **GRANTED**; and

2. The Plaintiffs' claims against the Defendants are **DISMISSED**;

3. All claims being resolved, the Court will enter an appropriate **JUDGMENT**; and

4. This case is **STRICKEN** from the active docket of this Court.

This the 29th day of September, 2017.

Gregory F. Van Tatenhove
United States District Judge